

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN

AUSTIN 11, TEXAS

XXXXXXXXXXXXN
ATTORNEY GENERAL

Honorable O. P. Lockhart, Chairman
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. 0-5255
Re: Departmental practice with re-
gard to valuation clauses in
life insurance policies submitt-
ed to the Board of Insurance
Commissioners.

Your letter requesting the opinion of this department
on questions stated therein is as follows:

"I. Texas Companies

"Article 4732, Section 7 requires that every
policy providing non-forfeiture benefits must con-
tain a clause stating the mortality table and the
interest rate used in computing the legal reserves
for the policy. Article 4682, Section 3 and Arti-
cle 4688 provide that the Commissioner or his rep-
resentative must compute the legal reserve value
of all policies at the end of each year. In order
to comply with this requirement, it is also nec-
essary that the valuation clause of any insurance
policy, whether it contains non-forfeiture values
or not, state the method of valuation to be em-
ployed (i.e., the full net level method of valua-
tion, the full preliminary term method, the
modified preliminary term method, etc.). In the
absence of any statement to the contrary, it will
be assumed that the full net level basis is the
method of valuation intended.

"Although Article 4732, Section 7 specifies
no particular mortality table to be used, Article
4688, Section 2 by implication requires that the
reserve liability maintained on account of any
policy shall not be less than the reserve computed
on the basis of the American Experience Table of
Mortality with the interest rate specified in the
policy if such interest rate is less than four
per cent. A further implication that has been

and is generally accepted by all Texas companies and by Departmental practice is that the non-forfeiture values provided in any policy shall not be less than the non-forfeiture values computed on the basis of the American Experience Table of Mortality and the rate of interest specified in the policy when such rate is less than four per cent. Hence, there would be no point in any Texas company inserting a valuation clause in any of its policies which would specify a mortality table that would result in lower reserves than the corresponding American Experience reserves, even though such practice might not be specifically prohibited by law.

"II.  Foreign Companies Doing Business in Texas

"Although the Articles mentioned above as applying to Texas companies are worded in such manner as to indicate that they also apply to foreign companies doing business in Texas, their application to foreign companies is complicated by the provisions of Article 4682, Sections 3, 4 and 5 and by Article 4734. In studying the application of Article 4682, Sections 3, 4 and 5 and Article 4734 to this situation, it is well to bear in mind two different points of view with regard to the valuation of insurance policies. First, there is the aggregate point of view, from which the sum total of the amounts of legal reserve maintained on account of each policy in force constitutes the insurance company's current liability on account of its insurance in force. This point of view is important to the Company in that it measures the amount of securities it must hold in order to be able to meet its obligations as they become due on its outstanding insurance policies. This point of view is important to the policyholder in that the amount of legal reserve held by the company measures to a certain extent the ability of the company to meet its obligations under his policy.

"The second point of view is the individual point of view, and is concerned chiefly with the determination of non-forfeiture benefits such as cash and loan values, paid up insurance values, and extended insurance values. This point of view is important to the company in that it determines many of the benefits to be granted policyholders, and is important to the policy owner in that it

determines the extent of many of the benefits and privileges he is to receive.

"We desire your opinion upon the following points: (a) does Article 4682, Section 5 permit the Commissioner to accept for filing under Article 4749 life insurance policies issued by foreign companies doing business in this State which contain a valuation clause less liberal to the insured and more liberal to the company than that required of Texas companies, or does such Article merely allow the Commissioner to accept the statement of the commissioner of another State showing the amount of reserves calculated and stating that such reserves have been calculated in accordance with the Texas Statutes, and (b) does Article 4734 require the Commissioner to accept for filing insurance policies issued by foreign companies operating in Texas containing a valuation clause specifying a valuation basis less liberal to the insured and more liberal to the company than that required of Texas companies when such foreign companies' home State has a law requiring the use of such valuation clause by all companies organized under the provisions of its law, and what is the situation when such other State has a law similar to Article 4734?"

Article 4732, Vernon's Annotated Civil Statutes, reads in part as follows:

"No policy of life insurance shall be issued or delivered in this State, or be issued by a life insurance company organized under the laws of this State, unless the same shall contain provisions substantially as follows:

". . . . .

"7. A provision which, in event of default in premium payments, after premiums shall have been paid for three full years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy, and on any dividend additions thereto, specifying the mortality table and rate of interest adopted for computing such reserve, less a sum not more than two and one-half per cent of the amount insured by the policy and of any existing

dividend additions thereto, and less any existing
indebtedness to the company on the policy. Such
provision shall stipulate that the policy may be
surrendered to the company at its home office
within one month from date of default for a spe-
cified cash value at least equal to the sum which
would otherwise be available for the purchase of
insurance, as aforesaid, and may stipulate that
the company may defer payment for not more than
six months after the application therefor is made.
This provision shall not be required in term in-
surances.

"8. A table showing in figures the loan
values, and the options available under the poli-
cies each year, upon default in premium payments
during the first twenty years of the policy or
the period during which premiums are payable, be-
ginning with the year in which such values and
options become available.

"9. That if, in event of default in premium
payments, the value of the policy shall be applied
to the purchase of other insurances; and if such in-
surance shall be in force and the original policy
shall have not been surrendered to the company
and canceled, the policy may be reinstated within
three years from such default upon evidence of in-
surability satisfactory to the company and pay-
ments of arrears of premiums with interest.

"    .    .    .    ."

Article 4734, Vernon's Annotated Civil Statutes, reads
as follows:

"The policies of a life insurance company
not organized under the laws of this State may
contain any provision which the law of the State,
territory, districtor county under which the
company is organized, prescribes shall be in such
policies when issued in this State; and the poli-
cies of a life insurance company organized under
the laws of this State may, when issued or deliver-
ed in any other State, territory, district or coun-
ty, contain any provision required by the laws of
the State, territory, district or county in which
the same are issued, anything in this chapter to
the contrary notwithstanding."

Article 4749, Vernon's Annotated Civil Statutes, provides:

"Life insurance companies shall, within five days after the issuance of, and the placing upon the market, any form of policies of life insurance, file a copy of such form of policy with the Insurance Department."

Article 4682, Vernon's Annotated Civil Statutes, provides in part:

"In addition to the other duties required of the Commissioner, he shall perform duties as follows:

". . . . .

"3. Calculate net value of policies. -- He shall, as soon as practicable in each year, calculate or cause to be calculated in his office by an officer or employe of his department, the net value on the thirty-first day of December of the previous year of all the policies in force on that day in each life or health insurance company doing business in the State, upon the basis and in the manner prescrived by law.

"4. See that net value of policies are on hand. -- Having determined the net value of all policies in force, he shall see that the company has in safe securities of the class and character required by the laws of this State the amount of said net value of all its policies, after all its debts and claims against it and at least one hundred thousand dollars of surplus to policy holders have been provided for.

"5. May accept valuation of other States. -- He may accept the valuation made by the insurance commissioner of the State under whose authority a life insurance company was organized, when such valuation has been properly made on sound and recognized principles, as a legal basis as above. The company shall furnish to him a certificate of the insurance commissioner of such States, setting forth the value calculated on the data designated above of all the policies in force in the company on the previous thirty-first day of December, and stating that, after all other debts of

the company and claims against it at that time,
and one hundred thousand dollars surplus to policy
holders, were provided for, the company had, in
safe securities of the character required by the
laws of this State, an amount equal to the net
value of all its policies in force, and that said
company is entitled to do business in its own
State.

".  .  .  .  ."

Generally speaking, it is stated in American Jurisprudence, Volume 29, page 67:

"Modern statutes require insurers to maintain reserves to assure the payment of losses
covered by their policies and the return of unearned premiums.  The term 'reserve' or 'reserves'
in the law of insurance means in general a sum of
money variously computed or estimated, which, with
accretions from interest, is set aside, 'reserved,'
as a fund with which to mature or liquidate, either
by payment or reinsurance with other companies,
future unaccrued and contingent claims, and claims
accrued but contingent and indefinite as to amount
or time of payment.  Such term has a distinctive
meaning in respect of life insurance maintained on
the level-premium basis.  In such situation, the
amount of the premium is necessarily greater than
the mortality cost during the early years of the
insurance and less than the mortality cost in
later years.  With the mortality table and an
assumed rate of interest on the investment of
premiums received, the amount of the accumulated
savings on this basis, at any date, can be mathematically computed.  This amount constitutes the
'reserve' against the policy or its net value.
The insurer must have on hand the aggregate
amount of these reserves against its outstanding policies.  The reserve against a life insurance policy constitutes the source of its nonforfeiture value upon a lapse in payment of
premiums."

Article 4688, Vernon's Annotated Civil Statutes, provides:

"The Commissioner, as soon as practicable
in each year, shall compute the reserve liability
on the thirty-first day of December of the pre-

ceding year of every company organized under the
laws of this State, or authorized to transact
business in this State, which has outstanding
policies of insurance on the lives of citizens
of this State in accordance with the following
rules:

"1. The net value on the first day of Dec-
ember of the preceding year of all outstanding
policies of life insurance in the company issued
prior to the first day of January, 1910, shall
be computed according to the terms of said poli-
cies on the basis of the American Experience Table
of Mortality, and four and one-half per cent in-
terest per annum.

"2. The net value on the last day of Decem-
ber, of the preceding year, of all policies of
life insurance issued after the thirty-first day
of December, 1909, upon the basis of the Actuary's
or Combined Experience Table of Mortality, with
four per cent interest per annum. The polici es
of any such life insurance company thereafter
issued upon the reserve basis of an interest rate
lower than four per cent shall be computed upon
the basis of the American Experience Table of
Mortality with interest at such lower rate per
annum.

"3. In every case in which the actual pre-
mium charged for an insurance is less than the
net premium for such insurance computed accord-
ing to its respective tables of mortality and rate
of interest aforesaid, the company shall also be
charged with the value of annuity, the amount of
which shall equal the difference between the pre-
mium charged and that required by the rules above
stated, and the term of which in years shall
equal the number of future annual payments due
on the insurance at the date of the valuation."

We have been unable to find any case where the appellate
courts of this State or any other jurisdiction have passed up-
on the questions presented in your inquiry.

It will be noted that under Article 4734, Vernon's
Annotated Civil Statutes, that the policies of foreign life
insurance companies may contain any provisions which the law
of the State, territory, district or county under which the
company is organized prescribes, when such policies are issued

in this State notwithstanding any contrary provision contained in Chapter 3, Title 78, Vernon's Annotated Civil Statutes. Paragraph 5 of Article 4682, Vernon's Annotated Civil Statutes, provides in effect that the Board of Insurance Commissioners of this State may accept the valuation made by the Insurance Commissioner of the State under whose authority the life insurance company was organized, when such valuation has been properly made on sound and recognized principles. The foreign company is required to furnish the Board of Insurance Commissioners a certificate of the Insurance Commissioner of such state. setting forth the value calculated on the data designated of all the policies in force in the company on the previous thirty-first day of December, and stating that, after all other debts of the company and claims against it at the time, and one hundred thousand dollars surplus to policy holders, were provided for and the company had in safe securities of the character required by the laws of this State, the amount equal to the net value of all its policies in force,  and that such company is entitled to do business in its own state.

Considering the foregoing statutes together, it is our opinion that Section 5 of Article 4682, Vernon's Annotated Civil Statutes, authorizes the Board of Insurance Commissioners of this State to accept for filing under Article 4749, Vernon's Annotated Civil Statutes, life insurance policies issued by foreign companies doing business in this State which contain the valuation clause less liberal to the insured and more liberal to the company  than that required of Texas companies, provided, of course, the provisions of Section 5 are complied with.

It is our further opinion that Article 4734, Vernon's Annotated Civil Statutes, in connection with what has heretofore been said in answer to your first question, requires the Board of Insurance Commissioners to accept for filing life insurance policies issued by a foreign company operating in Texas containing a valuation clause specifying a valuation basis less liberal to the insured and more liberal to the company than required to Texas companies when such foreign company's home state has a law requiring the use of such valuation clause by all companies organized under the provisions of its laws.

You also asked:

"What is the situation when such other state has a law similar to Article 3734?"

With reference to this question, it is our opinion that although other states may have laws similar to Article 3734, it would not

affect our answers to the foregoing questions, insofar as valuation of policies of foreign life insurance companies doing business in this State is concerned.

                            Yours very truly

                         ATTORNEY GENERAL OF TEXAS


                            By s/Ardell Williams
                                Ardell Williams
                                Assistant

AW:db:wc


APPROVED MAY 18, 1943
s/Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman